Good afternoon everyone. Welcome to the Illinois Appellate Court, 1st District, 6th Division. We're going to ask that the lawyers who are going to argue please both step up, introduce yourselves, and tell us who you represent. Thank you. Jeanette Samuels on behalf of the Petitioner Appellate. Thank you, Ms. Samuels. Good afternoon, Your Honors. Assistant State's Attorney Alan Sparberg on behalf of Cook County State's Attorney Kimberly Fox. Thank you, Counsel. We have going to go on about 15 minutes for each side for argument. It's a very short record. If we may extend that if we have a lot of questions or if we need to pursue an issue. Please keep in mind you'll have some extra time for rebuttal, Ms. Samuels. And that the microphones don't amplify well. They merely record what's being said. So please make sure your voice is loud and clear so that it goes on to the tape recordings. Please also understand that the judges have reviewed the briefs and the record and are very familiar with the facts. So you don't need to pursue that. And with that, we'll let Mr. Spelberg have a seat. And Ms. Samuels, you can proceed when you're ready. Thank you. Do you want to take your notes? Yes. May I proceed? Mm-hmm. So this case originates from the filing of a petition for a special prosecutor by Emmett Farmer, who's the father of Flint Farmer. He sought his special prosecutor under two bases. First, under Section A-5, the newly amended statute, that under Section A-5, the State's Attorney's Office was an interested party who was unable to fulfill her duties when investigating this case after it was sent back to her from the Independent Police Review Authority. And also that the State's Attorney's statements provided a sufficient basis to find that she had an inherent conflict of interest whenever investigating police-involved shootings, which this case was, which also provided an independent basis for a special prosecutor. Ms. Samuels, let me ask you to move your microphone a little bit toward the center, toward the center so you can be picked up. Okay. Your voice is kind of soft. Very soft. Can you speak up a little, please? Yes, Your Honor. So first under Section A-5, there's, to my understanding, there's been no appellate court ruling that has specifically defined what the meaning of otherwise unable to fulfill her, his or her duties is in the new amended statute. Our stance is that that language should be read in conformity with the prior language in the statute because the legislature has not shown a specific intent to undo prior judicial gloss. And in the absence of that intent, the statute must be read in conformity with the prior judicial constructions. Is there any ambiguity about the words in A-5 or A-10 of the statute? Is there ambiguity there? As to what otherwise unable to fulfill her duties means? Well, it read. Isn't there a reasonable interpretation of that counsel? I mean, what's the problem with that wording? I don't understand that. So the question is... It hasn't been construed. I know that. Right. But tell me what is the issue with that wording? What's wrong? We don't feel like there's anything wrong with the wording. It's just there's a disagreement about what that actually means as it applies to this case. And so our stance is that that wording means in any other situation, not specifically listed beforehand, whether she's sick or absent, in any other situation where it's found she cannot fulfill her duties, then the appointment of a special prosecutor would be appropriate. I'm sorry. Just coming in. Please go ahead. So what are those conditions that you're alleging exist, which would preclude the state's attorney from fulfilling her duties? So specifically to this case, it would be the appearance of impropriety. To this case. So it would be the appearance of impropriety having the Cook County State's Attorney's Office reinvestigate this case knowing that there was a deficient investigation the first time and they relied on that deficient investigation in order to continue to not prosecute this case the second time around, despite having additional evidence that was presented from the Independent Police Review Authority that no meaningful reinvestigation took place, which is why he's seeking a special prosecutor. Just a quick follow-up question. Do you have a basis for asserting that no additional, that they relied on the prior insufficient investigation and didn't do any additional investigation the second time around? Yes, Your Honor. When Mr. Farmer questioned the Cook County State's Attorney's Office regarding whether or not they were going to reopen the investigation into his case after the Independent Police Review Authority sent it back to them the second time, they said that for the same basis that was stated in the white paper that was authored by the prior State's Attorney's Office, they would not be pursuing the case this time. However, in that white paper, it relies on medical evidence that has subsequently been shown to be inaccurate due to the new investigation by the Independent Police Review Authority, specifically the autopsy findings and the meanings of the autopsy findings. Also, the credibility of the defendant officer in the case. Did Judge Martin have the white paper before him when he made his decision? He did, Your Honor. But we don't seem to have it in our record. So it was in the exhibit to the original petition. But the record in front of us, you mentioned a lot of things in response to Justice Conniseum's question, but we don't seem to have those things in our record. What we have is basically a petition without some of the exhibits or all of them. And when we are reviewing what Judge Martin did, we have to review everything he did and everything he saw. And I've got a concern that we maybe have a difficulty in granting you the relief you might seek based on the status of this record. Counsel, we do have the conclusions and findings of the white paper, do we not? Yes. So my understanding was that they would be included with the record. Well, you are responsible for the record. Yes. It was filed. Yes. Was the white paper filed? It's not in the record. The record was filed with the petition. The petition was filed. And all the exhibits were included on the CDs. But if it's not there, if you're saying that you haven't read it. The first attorney who filed it, things they thought were filed are not in the record, which is why we have motions to supplement the record. Let me ask you, Ms. Samuels, in a case like this where we're construing a statute that has been recently amended, neither side spent a lot of time talking about the legislative history. Right. And it looks like the amendment to the special state's attorney statute was part of a giant law enforcement reform package. And if you do look at the legislative history, you've got comments by Representative L.G. Sims, you've got comments by then Senator Carmichael Reuel about the change in the special state's attorney statute. And there appears to be, there was a countervailing force in Springfield that wanted to make sure that that language didn't go too far. And if you look at the transcripts, there are a number of comments by legislators to the effect that they either didn't want to change the existing law by changing this language, or that they were actually trying to make sure it was tighter, that there were less opportunities for people to try to seek special state's attorneys. And I'm wondering if you could sort of comment on that theme. So I would say that that theme would be countervailed by the chief sponsor of the legislation, it was State Senator Carmichael Reuel, and he stated repeatedly that the purpose of changing the, of amending the special prosecutor's statute was in order to expand the availability of this remedy in police-involved shootings. And so, and we also quoted that in our reply brief. And so whether it's to, even if it's to keep the state of the law the same, but just to clarify the ambiguity, we believe that, which is essentially what we're arguing, even though they changed the clause, all the existing case law would stay the same. We believe that's how it should be read. So does 810 have any relevance to the case, Section 810? So we did make a subsequent argument under Section 810 that there is an inherent conflict of interest due to the state's attorney's statements, where she has been on the record repeatedly saying that because of the closeness of her office with relying on police officers and in these police, that she's incapable of solving that inherent conflict of interest herself, and that forms a basis for having a special prosecutor for police-involved shootings. Were those made before she was elected? Yes, it was, Your Honor. And she has shown herself otherwise, has she not? She's never contradicted those statements, my understanding is that. Right, so my understanding is she's never said that those statements are untrue. What she has said is that we have found a different way to deal with that conflict of interest, which I understand and I appreciate because they did enact a statute where if they declined to prosecute a police-involved shooting, now it goes to the special appellate defender to review that. However, his case was decided prior to that statute going into an enactment, so he's sort of in this gray zone where we have an admitted issue. However, he wasn't entitled to that remedy that they now have in place to deal with that issue. Ms. Samuels, is it your position that because of A10, all right, and the fact that the State Attorney's Office just in general deals with police officers on a constant basis, that every police-involved shooting should automatically trigger their appointment of a special state's attorney? Is it my personal view or by the law? Well, you're advocating for a claim. Our job here, we have to write something, and what we write could be precedential. Yes. And is there something new I see about the facts of this case that say, yes, this triggers a special state's attorney, but not every police shooting would? I think by the nature of the statute itself, even if you were to find that her statements make, that her statements qualify for there being an inherent conflict of interest, even if the statute itself says when you find that inherent conflict of interest, it's still discretionary whether or not to appoint a special prosecutor in the case. And so it's not necessarily opening up the floodgates where in every case there has to be a special prosecutor to handle the, to handle a police-involved shooting. So that being your answer, so what we have in front of us, you're saying because it is a police officer shooting, there is a conflict of interest, and therefore Judge Martin would have the discretion to appoint or not appoint, right? Yes. And that he abused his discretion here? No. Okay, your position is what then? So our position is that she didn't give enough weight to the statements of the state's attorney's office where she admitted to there being an inherent conflict of interest. And so those statements in and of itself without any rebuttal, especially without any specific facts to rebut those statements, are enough to satisfy his burden in proving that there was an inherent conflict of interest. And that it would, excuse me. No, please go ahead. Finish your statement. And that based upon that, the court should have made a determination of whether or not it was appropriate to appoint one in this case. Is there anything inherent in that argument that you just made that relates to statements other than statements that Kim Fox made in her campaign? I'm not sure I understand the question. Outside the context of the campaign. Because you're saying that she made statements in her campaign that the state's attorney always has a conflict of interest and it's just a really bad idea because they work with police. We know that at least some of those statements were made in the context of a political campaign. Correct. And that when she took office, apparently she's maybe has taken a step back on that. Are there other statements that she's made as an elected official that you're relying on to support the appointment of an attorney here? Well, it was past the briefing in this, but she just had a speech at the city fair in Chicago a couple weeks ago where she repeatedly referred to police officers as our law enforcement partners, which we think would reinforce that theme. And that understanding that the law enforcement are her partners, which is exactly what she has been saying and develops this conflict and supports that understanding. What's her standard of review here? So because we're construing the meaning of the statute under Section 8-5, the standard of review should be de novo. But that's construing the statute. Yes. What about the decision the judge made in this court relative to not to appoint? Right. So the judge made his decision without specifically ruling on how the language in the statute should be reviewed. He certainly talked about it. Yes, Your Honor. In his ruling. Yes. But he never made any explicit findings regarding what the meaning of, specifically regarding what the meaning of Section 8-5 was. My understanding of his ruling was that. It was apparent to him on the face what it meant. He didn't need to explain it. I don't know. He just didn't go into detail, right? Right. Let me ask you this. After the prior state's attorney decided she would not prosecute and it went to independent review, and then it came back to this state's attorney, correct? This present state's attorney? Right. And they decided not to prosecute or not to appoint as well. Correct. Now, do you know or not know if there was any further investigation by the state's attorney's office other than the information that they got from before? Do you know that one way or another? When you say from before, do you mean from the? From the prior ruling of the prior state's attorney. Once they found out they had an additional request or there was a referral from the independent review board, that there might be, and I think the wording was, let's see here, the exact wording, a preponderance of the evidence. HIPAA says the preponderance of the evidence shows that the officer acted unreasonably. Right. That's what they said. So that came to the present state's attorney. Correct. Do we know that she did or did not do anything else in looking into that case? Right. So all we can do is infer because their response was based upon the same basis of the prior state's attorney and the prior state's attorney didn't have that evidence and the new evidence that she did receive directly contradicted that evidence. The inference is that she didn't review the new evidence. Well, how can we infer that? I mean, you could infer that maybe they did their own investigation. How do we know what happened really? Because had they done their new investigation, they couldn't have relied on the same basis. The evidence was directly contradicted, if that makes sense. We've got a couple of minutes left if you want to conclude. I will reserve the remainder of my time. All right. Thank you very much, Ms. Samuels. Mr. Stahlberg. Thank you again. If I could just clarify the record for one moment. As counsel stated, all of the exhibits attached to the petition were attached on a CD-ROM that were submitted to the court. In the e-file record, it does say that there is a volume, a third volume, referring to a CD-ROM. I had always assumed that the clerk's office had transmitted the physical CD-ROM to the court. Apparently, it has not. We've experienced some issues with e-filing, and I think what we're seeing is a lot of motions lately for leave to transmit exhibits in their original form, which is I think what you need to do to get a CD-ROM over to us. Counsel and I will arrange for that to occur. But, counsel, I'm glad you stated that because there was nothing in your briefs that talked about insufficiencies in the record. No, no, no. And that's because I believe that the e-file record included the CD as referenced in the clerk's preparation. So did you feel it was deficient, so you couldn't proceed without it? No, no. But admittedly, I had the CD-ROM at the time of the petition being filed. In response to the last point that was discussed regarding did the Kim-Fax administration reexamine the materials, and if you'll look at the answer to the petition, the objection to the petition that we filed before Judge Martin, you'll see in paragraph 6 that it specifically states that after the materials were sent back over by the Independent Police Review Authority, the matter was sent over to the office. Kim-Fax became state's attorney on December 1, 2016, and at that point, the office reexamined the case. And when I say reexamined the case, what that means is that the new attorneys of the office examined the case in total, and then in May of 2017, they met with Mr. Farmer to inform him that the decision to not bring charges would be reaffirmed for the same basis. We did not give any more information than was included in the white paper at that time, and what was stated in the white paper was a belief in the inability to establish the facts of the case beyond reasonable doubt, as would be necessary to bring a legitimate criminal charge in this matter. And that was the reason why there was rejection of charges in the first place and why there was a rejection of charges under the Kim-Fax administration. When you go back to what you just said about there being no charges beyond reasonable doubt, was that a global statement as to any possible crime, not merely murder, but unlawful use in all the usual things? I can't speak specifically about the facts of the case other than what appeared in the white paper, and the white paper discussed different offenses and potential defenses and the ability to prove. But when it comes to charging law enforcement officers, particularly when they're on duty, it is very, very complicated in terms of which evidence prosecutors are even allowed to consider. Because of the Garrity case, Garrity v. New Jersey, and then the way it's been interpreted here in Illinois, as we cite in our brief, Garrity and People v. Hilares, we are very much restricted in the types of evidence we can consider because any types of communications between internal affairs and the police officer are excluded, have to be excluded from our consideration. And as you'll see from the petitioner's brief, a vast majority of the facts which she relies on are materials which are, are statements which are made in that context. And so while we're engaging in the analysis of whether or not to bring a charge against a law enforcement officer, we have to look at what evidence we have which is admissible or even potentially admissible, and then factor in potential defenses that we would expect would be made in an ordinary case and try and assess the likelihood of proving the case beyond a reasonable doubt. Counsel, can I just get a comment about your opponent's argument relative to the judge's ruling? Mm-hmm. The 26 in California relative to A5 and A10 and the deficiency of that ruling, as you suggest? Your Honor, yes. Actually, we do not agree with counsel's argument. Judge Martin carefully considered not only the allegations and the response but also the status of the law. And what he specifically said is I'm looking at the statute and I'm looking to see if you satisfy it. And he found that she did not, that the petitioner did not. And the reason why is because, as you recognize, the statute was dramatically rewritten in 2015, became effective January 1, 2016, with the idea of making it very clear that in order to disqualify a state's attorney, to remove her over her objection, there would have to be proof that the state's attorney suffered from an actual conflict of interest. What the statute provided before was that it was that the state's attorney was interested in any cause of proceeding. And that was well understood to be a very narrow ruling from 1872 until 2004 when the Lane case first brought in the concept of an appearance of impropriety. And then between 2004 and 2014, there were, I believe, four cases that referenced this notion. And as Your Honor mentioned, the legislative history, in the midst of this very broad criminal justice bill, there was a discussion about amending Section 9008. And there was a big discussion about what do we do with this appearance of impropriety. And the State's Attorney's Association worked closely with Representative Sims, who was the chief sponsor in the House, asking for a return to the previous ruling that would have to be an actual conflict of interest, that these cases. So is it your position that the amendment to the statute was intended to overrule Lang? Lang and Beckerstaff, yes, Your Honor. That was the purpose of it. It's one of those cases that almost seems to be an outlier because it has such egregious facts that the court, I think, in the world of the panel, was in that case, Judge Johnson, and the judges in the State District Court said, we have to do something. We can't let this one go ahead. You're absolutely right, Your Honor. Lang is a truly extraordinary scenario. It involves an Assistant State's Attorney staking out a defendant after he successfully won a case in the traffic court to see if he's still committing a crime and then calling the police, getting a warrant against him, serving as the prosecutor of the case until trial, and then serving as the only witness. And what the Second District held in the case was that that amounted to a conflict of interest for the entire Lake County State's Attorney's Office because it seemed to have been authorized by the Lake County State's Attorney. They use the term obsessed. Obsessed, yes, Your Honor. And they did mention this notion of an appearance of impropriety, but no court ever had recognized that as a proper basis to remove the prosecutor, the State's Attorney, or the Attorney General over to that point. And then after that, the Bickerstaff people versus Max, people versus Weeks, all those cases talk about this appearance of impropriety standard, but not a single case had ever found a violation of it. Lang was the only case that says that. And so it was very much an outlier. And so the State's Attorney Association, working with Representative Sims, pushed for, at that point, a change to the statute of an actual conflict of interest. So changing the language from interested in any proceeding to the State's Attorney suffers from an actual conflict of interest in the manner of proceeding. And I believe that the legislative history, when Representative Sims is talking about it, makes that clear. When it's in the Senate and Senator Raul, then Senator Raul, is discussing it, he's actually, my recollection of the legislative history, is that he's not talking about this particular change to the special prosecutor statute. What he's talking about is the ability of individuals, like Mr. Farmer, to bring a petition. Because prior to the change in this statute, in Public Act 99352, there would often be fights over who had standing to bring that petition. And Senator Raul is talking about, in these instances, how it would be easier for those individuals, the family members of people who feel that they've been harmed in some way, to bring these petitions. And it's that reason why, as you'll notice, we did not object to Mr. Farmer's standing in any way in this case. Because we understood that the state of the law had changed dramatically, and he certainly had standing to bring this as an interested person. But the plain language of the statute, as amended, is very clear. That in order to remove a State's Attorney over her objection, there has to either be an actual conflict of interest, or there has to be a demonstration that she was sick, absent, or unable to fulfill her duties. And as you'll see in my brief in particular, there's a chart on page 18 of my brief, laying out how the current statute matches the previous version of the statute. And you'll see that the pre-amended version has both sick and absent, much like the current version. The previous version has unable to attend. The current version has unable to fulfill. The previous version has interested in any manner. And the current version has suffers from an actual conflict of interest. So when the Petitioner is arguing that the current statute, with its language unable to fulfill her duties, is intended to incorporate the previous interested in any manner, that's just not clear. That's just not true. It doesn't match up to the rules of statutory construction, the plain language of the statute. And that's why we objected, because State's Attorney FACTS does not have an actual conflict of interest. We objected because the appearance of impropriety standard is no longer the law under the statute. And we objected because the State's Attorney FACTS takes this case in all cases seriously, considers the case on their FACTS, makes a determination with the FACTS in the law, and exercises her constitutional authority to decide whether or not to bring a charge or to not bring a charge. Is there anything that you can discuss with us about whether the new statute, you've got this term actual conflict of interest, and to lawyers that evokes ethics rules, for judges it evokes the theory of ethics rules. I can't hear a case involving my brother, for instance. Is there anything out there that can help us when we're trying to interpret this, that this means something different than what it normally means in the usual context? And Ms. Samuels can respond to that as well. Because actual conflict of interest often means only you've got a financial interest, you've got an interest of a close relative, you're a witness, as opposed to you simply spoke against, in the campaign setting, that there was this problem with the relationship between the State's Attorney and the police department. Yes, Your Honor. And I would say the answer to that is found in the case law, in particular the EPA case, which was the Illinois Supreme Court construing the language of the Attorney General Act at the time when the State's Attorney, the Special State's Attorney provision and the Attorney General Act were a single provision. And in that case, what the Illinois Supreme Court held was that the basis to find a conflict of interest to remove the Attorney General is limited, is very limited, to two situations, where the Attorney General is a party to the matter or is personally interested in it. And so those are the only situations that the Supreme Court had ever recognized. That was what all the case law, you'll see in In re Harris and McCall v. Devine, follows that same rule for what the conflict of interest for removing a State's Attorney is. And that's what I believe the actual conflict of interest is. It was returned to that pre-understanding. In terms of sort of the State's Attorneys or then-candidate Kim Fox's campaign statements, what she said during the campaign was that she did believe that there was an inherent conflict and that, therefore, there should be a Special State's Attorney appointed. What she said after taking office is that she understands the concerns, but she doesn't believe that it rises to the level of an actual conflict of interest, and, therefore, instead of appointing a Special State's Attorney, she sought for the ability to have the matter, anytime there was a refusal to prosecute, a declination of charges, to have the matter reviewed with a second look by the State's Attorney appellate prosecutor. That is an ongoing process. It's happened almost 10 or 15 times already in the last two years. Unfortunately, because of the timing and the adoption of the statute, Mr. Farmer's case was not able to fall into that risk, into that group. And because of the resources available to the State's Attorney appellate prosecutor, there was an understanding in the memorandum of agreement that it could have had that risk. Right. And so what we have in this case and what Judge Martin found was that there were the current State's Attorney had examined this case and found that there was no basis for charges or made a determination that there wouldn't be charges. The previous State's Attorney Administration made a determination there would be charges, and the FBI made a determination that there wouldn't be charges. And as Judge Martin said, three different prosecutorial agencies, effectively, had made a determination in their discretion not to bring charges and that he didn't feel that he had the authority to interfere with those decisions because of the role that the State's Attorney's Office has independent of the judiciary. And so if there's no further questions, we would ask this Court to affirm. Thank you. Thank you, Mr. Samuels. Rebuttal. So specifically regarding the EPA case, that was interpreting the language of what it means to be interested in a proceeding. So to say that the EPA case applies would inherently read we're interested into the special prosecutor statute, which I think it should be because when you look at the special prosecutor statute and when you look at the special attorney general statute, those have always been read in lockstep. And the attorney general by his or her constitutional office has the same duty and the same ability to prosecute a criminal case as a state's attorney does so long as the state's attorney doesn't object. And so what you have by narrowing, by creating a ruling that would narrow the ruling of the special prosecutor statute but not the special attorney general statute, is you have a defendant in a place or in a position where he would be entitled to relief if one body prosecuted him under the exact same set of facts, but he would not be entitled to relief under the exact same set of facts if you put a different name on the office of the body that's prosecuting him. And one of the doctrines of statutory construction is that you should not create absurd results. Respectfully, if that were to be the case, I believe it would create an absurd result. Moreover, there's been more than just this Lane case that has read into the meeting of what interest it meant in a petition for a special prosecutor. So going back to Baxter, they said even though they found that the petitioner didn't meet the burden, they did say that a political alliance, if you could prove it, would be a basis to show that somebody was interested in a special prosecutor petition. Lane has the appearance of impropriety. If you have Summer out of the 3rd District, it's the integrity of the judicial system. So when you go back and you look at all these petitions, Interest It has had a broader meeting going all the way back to the 80s. And if you only read it to mean those two circumstances going back to the EPA, only to mean that the state's attorney can't attend, then it's undoing not just 4 years or 10 years of judicial precedent. You're going back to 30 years of judicial precedent. Baxter was before I was even alive. So it's undoing that case. Don't remind us. And I think specifically you have to look at what the nature and what the purpose of the special prosecutor statute is, which is to preserve the integrity of the judicial process. And so when you look at what it means to be otherwise unable to fulfill your job, that can't just mean when it's sick and when you're absent. We understand that it would be a high burden to prove, but like the Lane case shows, there are situations where you can't write it into statute what exactly that situation is going to be. But when you see it and when you hear it, you know that that implies that that implicates the integrity of the judicial system. And in those cases, a special prosecutor ought to be appointed because the state's attorney's office would be unable to fulfill their duties. So regarding what that subsection A-5 means, specifically otherwise unable to fulfill those duties, we think it reads into all the other case law that has already been, that was already read into the statute. If state's attorney Fox had written an affidavit that said, there is no longer an actual conflict of interest in the state's attorney's office, we would lose. We admit that. The state's attorney's office, the respondent cannot state, cannot point to one specific fact where she repudiates that inherent and that actual conflict of interest. And if McCall v. Divine stands for anything, it's that when you are doing a petition for a special prosecutor, it has to be supported by specific facts. You don't just get to make argument, you have to support it by facts. There is no specific fact that the state's attorney's office can point to where she repudiated that statement in any meaningful form. Not one public statement where she said, there's no longer an actual conflict of interest. Not an affidavit where she said, there's no longer an actual conflict of interest. Do we need to have that in every case? Specific facts? No, to have an affidavit from the state's attorney's office as these cases come before her? Do we need that now or are you suggesting that? I'm saying that if she's going to repudiate a specific fact, it should be repudiated by specific facts. So she can't just argue that I disagree with this fact. You have to point to something specific and admissible within the record to support her argument. She just argues. As to every case or just this case? That's the standard for petitions. They have to be supported by specific facts. And so we understand that this case is an anomaly. We understand that he's stuck in a gray area. And for that basis, we would ask that. Can I ask you a quick question, counsel? Yes. Your point referred to a new unit that was set up by Ms. Fox relative to reviewing cases. It's an appellate unit, I believe you said, that reviews these kind of cases. Do you know that to be true or not true? So the state's attorney's office within it has a special prosecution unit, which reviews cases that involve police-involved shootings. If they decide to decline to prosecute, what they do is they send it to the state appellate defender. State appellate prosecutor. Yes, excuse me, state appellate prosecutor. As counsel stated, his case was reviewed before that process, and so it wasn't entitled to that process. That has been done by Ms. Fox. Right. Thank you. Thank you. Thank you, Ms. Samuels. The matter will be taken under advisement and court will stand in recess. Thank you.